ELENA MARGARITA VEGA, ETC., Plaintiff and Appellee, *v.* MANUEL VEGA OLIVER and RAMÓN VEGA, JR., Defendants and Appellants.

No. 11873. Decided June 15, 1962.

*Jorge M. Morales* and *Ramón L. Nevárez* for Ramón Vega, Jr., appellant. *Córdova & González* and *Carlos Cebollero* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Minor Elena Margarita Vega, represented by her mother with patria potestas Elena Vázquez de Marín, brought an action for support praying that judgment be rendered ordering her father Manuel Vega Oliver, or in his default, her paternal grandfather, Ramón Vega, Jr., to pay an allowance of $150 a month for her support. It was expressly alleged that the allowance sought was necessary to defray the expenses for the support and education of the minor plaintiff "in addition to the limited help which her maternal grandparents and her mother could give her." In the answer formulated by the defendant father it was alleged that his income did not enable him to pay such allowance. The defendant grandfather, on his part, alleged as special defense that the support claimed was the obligation of the plaintiff's father, and that the latter had no disability or impediment to relieve him from his obligation. After the corresponding trial was held, the trial court, in view of the defendant's economic condition, fixed the monthly allowance requested and ordered Manuel Vega Oliver to pay to the plaintiff the sum of $60 and the defendant grandfather, Ramón Vega, Jr., to pay $90. It ordered them further to pay the sum of $100 each for attorney's fees. The defendants appealed.[1]

It appears from the evidence that the marriage contracted by the parents of the minor plaintiff was dissolved in 1943 by judgment of divorce which included a pronouncement conferring the patria potestas to the mother; that the minor plaintiff was living on the date of the hearing and since the previous year in the Republic of Venezuela in the company of her mother with the patria potestas, who had contracted

---

[1] Despite the fact that both defendants appealed from the judgment rendered, the father, Manuel Vega Oliver, did not perfect the petition for appeal. The only appellant who filed a brief containing the corresponding assignment of errors was the grandfather, Ramón Vega, Jr.

subsequent marriage; that after her parents were divorced the minor went to live with her maternal grandparents and that they supported her, but as a result of changes of fortune they were in no position to continue to support her; that the minor's father had only started to pay her the sum of $30 monthly as of the filing date of the judicial claim; that the plaintiffs' mother has no private income because she has no property of her own; that the present husband of the plaintiff's mother contributes toward the latter's expenses, since the minor lives in the conjugal home and she is also given school transportation and other expenses necessary to maintain the social position and life to which she has been accustomed since she was born; that the claimant has been reared in a nice environment and since she was a child she has attended private schools and has received "everything she needs" (Tr. Ev. 15), although "without exaggeration" (Tr. Ev. 13); that the monthly expenses incurred in the support and education of the minor amount to $215.

The main question raised in this appeal refers to the duty of the paternal grandfather of an unemancipated minor to help with her support. Which is the character and extent of this duty when both parents of the recipient are living? Up to what point is the divorced mother who has contracted subsequent marriage expected to share the responsibility of providing support to her minor daughter? Let us examine the applicable legal precepts.

The duty to provide support to the minor descendants—which flows from the natural affection and the certainty of the relationship—is consecrated, as respects the parents, in §§ 118 and 153 of the Civil Code, 31 L.P.R.A. § 466 and 601, and as respects the other ascendants, in § 143 of the same code, 31 L.P.R.A. § 562.[2] Section 153 of our Code, as dis-

---

[2] For a study of the state of the legislation in several countries on support among relatives, see FERNÁNDEZ CLÉRIGO, *El Derecho de Familia en la Legislación Comparada* 527–50 (1947).

tinguished from its counterpart, § 155 of the Spanish Civil Code,[3] imposes the indivisible duty on the father as well as on the mother in providing expressly that both have, with respect to their unemancipated children, "the duty of supporting them . . . educating and instructing them *in accordance with their resources*." This right of the children to receive support is not extinguished nor altered by the divorce of their parents, because it is expressly provided in § 108 of that Code.[4]

 It having been established that the duty to provide support subsists jointly on the father and the mother even after the divorce, and without the demandability depending on the exercise of the patria potestas, it is well to ask if this responsibility falls on the new community partnership which either parent may have constituted upon contracting subsequent marriage. The answer is found in subd. 5 of § 1308 of the Civil Code which includes, among other duties of the community partnership, "the support of the family and the education of the children in common, and of the legitimate children of one of the spouses only."[5] SCAEVOLA[6] very ably explains the reason underlying the precept in the following words:

---

[3] In consonance with the subsidiary patria-potestas system established throughout the provisions regulating the paterno-filial relations, § 155 of the Spanish Civil Code imposes an identical duty "on the father or, *in his default*, the mother." The most modern Spanish textwriters advocate a common system for the exercise of the patria potestas and thus endorse the present tendency to recognize the maternal rights. JOSÉ MA. CASTÁN VÁZQUEZ, *La Participación de la Madre en la Patria Potestad* (1957).

[4] It reads in part as follows: "The divorce of the parents will not deprive the children born during the marriage of the rights and privileges which, according to law, belong to them, by reason of the marriage of their parents. . . ."

[5] The duty of the community partnership imposed by this section as respects the child of one of the spouses is not confined to the education, but also includes his support. In XXII *Código Civil* 285 (1905), SCAEVOLA says that a literal application should be rejected because "the rule of construction of the absurd consequences which imposes the duty is

"In establishing a novelty with respect to its legislative history, § 1408 also makes it the duty of the community partnership to educate the legitimate children of one of the spouses only. A very human sentiment has surely prompted the lawmaker to establish this exception of the traditional doctrine according to which it was always the private duty of each spouse to support his own children. The Code presupposes that when a widower with children contracts marriage the other spouse respects and makes his own as far as possible the situation created, and undertakes with all benevolence to help all those with whom he acquires the legal duty to share life. A strict and absolute justice imposes on the father or mother the exclusive duty to support his or her child at his or her expense, independently of the economic means of the other spouse. However, if the legitimate child living in the company of his father and of the new spouse will contribute, as if he were the child of both, to the satisfactions of the marriage and to share all their misfortunes; if he is going to be brought up together with the other children of the new marriage and perhaps spend with them the sweet years of childhood and be their companion and brother, is it not repugnant to the constitution and family system to regret the food he eats, the clothes he wears out, the education he receives, when unfortunately he has not received from his deceased parent sufficient property to take complete care of these needs?"

GOYENA, cited by MANRESA,[7] shares the same view when he says that "One who marries a widower or a widow can not ignore whether he has children and the obligation to support them which he contracts; the contrary would cause vexation and discord in the second and subsequent marriages." However, it is necessary to clarify that the support referred to in this § 1308 which the community partnership is bound to provide to the child of one of the spouses is the support provided in § 153 *supra*, namely, while the child is a minor, and

---

absolutely imperative in this case." In his work *El Matrimonio* 319 (1939), EMILIO MENÉNDEZ maintains that the legitimate child of only one of the spouses is entitled to support because it forms part of the family.

[6] XXII *Código Civil* 283–284 (1905).

[7] IX *Comentarios al Código Civil Español* 607 (5th ed. 1950).

the support for the education of the recipient; if the latter is of full age, the applicable section is § 143, and then it would be the exclusive responsibility of the father or the mother and it can not be imposed on the community partnership of either of them. This was expressly recognized in Judgment 101 of the Supreme Court of Spain of December 20, 1952 (40 *Jur. Civ.* 956, 967–70, III).

It could be argued that § 1308 does not cover the situation of a divorcee who contracts subsequent marriage because it was patterned on § 1408 of the Spanish Civil Code where the effects of the divorce recognized in Puerto Rico do not exist. In other words, that the concurrence with respect to the parents' duty to support is not possible when one of them has contracted subsequent marriage. A similar construction of § 1325 of the Civil Code on the divorced wife's right to support pending liquidation of the community partnership was rejected by this Court in *Pérez* v. *District Court*, 69 P.R.R. 4, 19 (1948), in which we said that a literal construction of the phrase surviving spouse contained in that section would exclude a divorced wife from its provisions, but that the same was not justified "in the light of its background." It is well to add that both death and divorce are causes for the dissolution of the marriage and that we should recognize the same effects as far as possible.

On the other hand, the imposition of this duty on the second community partnership is justified on the ground that to the latter belongs the usufruct from any property belonging to the minor children of only one of the spouses, § 1301 of the Civil Code, 31 L.P.R.A. § 3641, and that what each spouse receives from his labor, industry, or business shall be community property, § 1303, 31 L.P.R.A. § 3643. MANRESA, *op. cit.* at 607–08, says "The principle is logical: since all the father's or mother's labor and all their capital, and even that of the minor children as the case may be, passes to and is used by the community partnership, and the

support will come out of the product of this labor and of the fruits of the capital, it is only natural that whatever is necessary for such purpose should come out of that fund (the community partnership)." See 4 BORRELL Y SOLER, *Derecho Civil Español* 440.

■■ However, the responsibility of the grandparents as respects the payment of support to their grandchildren is subsidiary, that is, it is demandable only in the event *both parents* are physically and mentally disabled to provide the same to their minor children. Judgments 42 of April 27, 1911 (121 *Jur. Civ.* 268), and 13 of January 10, 1906 (103 *Jur. Civ.* 78). Hence, the need for establishing that those first called upon to provide support lack the means to do so. Judgments 158 of November 24, 1925 (168 *Jur. Civ.* 685), 117 of November 24, 1920 (151 *Jur. Civ.* 560), and 95 of April 5, 1902 (93 *Jur. Civ.* 551). In the case of divorced parents it is necessary to prove that both are unable to comply fully with their duty, and if one or both of them have contracted subsequent marriage it is necessary to prove that the new community partnership can not provide any.

■ In the specific case under consideration it was expressly alleged that the plaintiff's mother could only give her child a "limited aid." The evidence further disclosed that the community partnership constituted by the mother and her second husband[8] lends some aid to the minor plaintiff for her support and education, although this was not sufficient to take care of all her expenses and needs. It also appears that the plaintiff's father was not able either to take care of all the necessary expenses. This being so, the pater-

---

[8] Even assuming that the law of the place where the community partnership has its residence were applicable, the solution would be identical because § 165 of the Civil Code of Venezuela also provides that "The support of the family and the education of the common children, and also of only one of the spouses, shall be for the account of the community in those cases in which they are entitled to support."

nal grandfather's duty was demandable. It is possible that if the defendant-appellant had approached the question in the manner we have done in this opinion, the result would have been otherwise in view of the possibility that it would have been established that the community partnership of which the minor's mother is a part was in a position to provide all her support, but there is nothing we can do in this sense because this question was not raised. The defendant merely alleged that the father was in a position to take care of his daughter, and his efforts during the trial were aimed at establishing this fact.[9]

In view of the foregoing, the appeal filed by appellant Manuel Vega Oliver is dismissed and, as respects the appeal taken by defendant Ramón Vega, Jr., the judgment rendered by the Superior Court, San Juan Part, on March 10, 1955 will be affirmed.

---

[9] The appellant also alleged that if he were bound to provide support to his granddaughter, he would exercise the right of election conferred upon him by § 148 of the Civil Code, 31 L.P.R.A. § 567, receiving and maintaining the plaintiff in his own dwelling. We need not discuss this point since, as it appears from the record, the recipient is at present emancipated by marriage. See, however, *Moll* v. *Llompart*, 17 P.R.R. 666 (1911).

When judgment was rendered the grandfather gave bond—subject to the results of this petition for appeal—to secure the allowances for support corresponding to the period from the commencement of the action to the date of the judgment. This is the only reason why the appeal is not academic.